**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **BARRETTE OUTDOOR LIVING, INC.,** | * | |
| | * | |
| **Plaintiff,** | * | |
| v. | * | Civil Case No. 19-cv-03027-SAG |
| | * | |
| **IRON WORLD MANUFACTURING, LLC,** | * | |
| | * | |
| **Defendant.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Barrette Outdoor Living, Inc. ("Plaintiff") filed a Complaint against Iron World Manufacturing, LLC ("Defendant"), alleging infringement of at least three of Plaintiff's patents: U.S. Patent 8,413,332 (the "'332 Patent"); U.S. Patent 8,413,965 (the "'965 Patent"); and U.S. Patent 9,151,075 (the "'075 Patent"). ECF 1. Defendant failed to respond to Plaintiff's Complaint. On December 18, 2019, Plaintiff filed for a Clerk's Entry of Default, ECF 12, and a Motion for Default Judgment and for Discovery. ECF 13. On that same day, the Clerk entered a default, ECF 14, and sent Defendant a Notice of Default, which indicated that Defendant had thirty days to file a motion to vacate the default, ECF 15. On January 28, 2020, ten days after the lapse of Defendant's deadline, Defendant filed its Motion to Set Aside Default. ECF 16. The parties have since filed an opposition and a reply to that motion, respectively. ECF 19, 20. No hearing is deemed necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Plaintiff's Motion for Default Judgment will be denied, and Defendant's Motion to Set Aside Default will be granted.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is an Ohio-based corporation that provides residential and commercial fencing and railing products, including extruded metal fencing and railings. ECF 1, ¶¶ 2, 7. Defendant is a Maryland-based corporation that manufactures decorative and ornamental gates and fencing products, specializing in iron fencing products and custom fence designs. *Id.* ¶ 3; ECF 16 at 3. Plaintiff owns three U.S. patents: the '965 patent, the '332 patent, and the '075 patent. ECF 1, ¶ 8; *see* ECF 1-2 (the '965 patent); ECF 1-3 (the '332 patent); ECF 1-3 (the '075 patent). The '965 patent claims an apparatus with a sliding pivot-point connection between the pickets and rails of a fence/railing. ECF 1, ¶ 10; ECF 1-2. The '332 patent "claims a method for manufacturing a fencing/railing assembly." ECF 1, ¶ 11; ECF 1-3. The '075 patent claims an apparatus with one or more connectors providing pivot-point connections to one or more pickets. ECF 1, ¶ 12; ECF 1-4.

On May 20, 2019, Plaintiff sent a letter to Defendant, in which Plaintiff alleged that Defendant had infringed on Plaintiff's patents. ECF 1, ¶ 18. Defendant admits to receiving a letter from Plaintiff dated May 20, 2019, but took no action in response. ECF 16, Ex. A, ¶ 13 (Def.'s Proposed Answer).

On June 13, 2019, Plaintiff sent a second letter to Defendant, again alleging patent infringement, and warning Defendant that failure to remedy its allegedly infringing actions might result in a lawsuit. ECF 1, ¶ 18. Defendant admitted receiving a letter from Plaintiff dated June 13, 2019, but again took no action in response. ECF 16, Ex. A., ¶ 18.

A couple of weeks after Plaintiff sent its June 13, 2019, letter, a representative for Plaintiff spoke by telephone with Richard Stellabuto, Defendant's president. ECF 1, ¶ 21; ECF 16, Ex. A, ¶ 21. During this conversation, Mr. Stellabuto requested an additional two weeks to

respond to Plaintiff's letters. ECF 1, ¶ 21. After two weeks passed without a response, Plaintiff called Mr. Stellabuto again, and left a voicemail. *Id.* This voicemail also went unanswered. *Id.*

Plaintiff filed its Complaint on October 16, 2019, alleging that Defendant infringed the '965, '332, and '075 patents. ECF 1 at 3. As described above, Defendant failed to file a timely answer, the Clerk entered default, and the instant motions ensued.

## II. LEGAL STANDARD FOR SETTING ASIDE THE CLERK'S ENTRY OF DEFAULT

After the Clerk enters default, the Court "may set aside an entry of default for good cause." Fed. R. C. P. 55(c). The Fourth Circuit has stated that, when compared to the standard under Rule 60(b), the "good cause" standard in Rule 55(c) "is more forgiving of defaulting parties because it does not implicate any interest in finality." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.,* 616 F.3d 413, 420 (4th Cir. 2010); *see also Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967) ("Generally a default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious defense."). Indeed, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton*, 616 F.3d at 417. Thus, motions to set aside default "must be 'liberally construed in order to provide relief from the onerous consequences of defaults and default judgments.'" *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 954 (4th Cir. 1987) (quoting *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969)). Because the Clerk has made an entry of default against Defendant, but a default judgment has not been issued, Defendant's motion to vacate is correctly considered pursuant to the more lenient standard of Rule 55(c), rather than Rule 60(b).

Six factors are relevant to the analysis of this motion. "When deciding whether to set aside an entry of default, a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006). The decision to set aside a default "lies largely within the discretion of the trial judge." *Id.* at 204.

## III.  ANALYSIS

Having established the relevant factors for determining whether to set aside an entry of default, the Court will address each factor in turn.

### A.  Presence of a Meritorious Defense

Defendant argues that it possesses three meritorious defenses: Plaintiff's failure to state a claim upon which relief can be granted; non-infringement of the patents at issue; and invalidity of those patents. ECF 16 at 3-5. "A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.,* 843 F.2d 808, 812 (4th Cir. 1988). Moreover, "a bare allegation of a meritorious defense" lacking "underlying facts to support" is merely conclusory and fails to satisfy this factor. See *Consol. Masonry*, 383 F.2d at 252.

While the first two of Defendant's suggested defenses – Plaintiff's failure to plausibly state a claim, and the non-infringement of Plaintiff's patents – are either unpersuasive or factually unsupported, Defendant successfully proffers a meritorious defense related to the alleged invalidity of Plaintiff's patents. ECF 16 at 5-7; *id.*, Ex. A, ¶ 4; ECF 20 at 3-6. In support

of this contention, Defendant proffers evidence that would permit a finding in its favor: the existence of U.S. Patent 8,403,303 (the "'303 patent"). ECF 20, Ex. A. Defendant alleges that the '303 patent invalidates Plaintiff's patents, on the grounds of anticipation and obviousness. ECF 20 at 3.

As background, a patent application is not entitled to a patent if "the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." 35 U.S.C § 102(a)(1) (2018). These printed publications are referred to as "prior art." *Id.* § 102(a). A piece of prior art that describes the claimed invention, prior to the effective filing date of the patent application, is said to have "anticipated" the patent application, and causes the patent applicant to lose entitlement to a patent. *See, e.g.*, *In re Cruciferous Sprout Patent Litig.*, 168 F. Supp. 2d 534, 538 (D. Md. 2001). "Anticipation is a technical defense which must meet strict standards: 'Unless all the same elements are found in exactly the same situation and united in the same way to perform the identical function' in a single prior art reference 'there is no anticipation.'" *Tights, Inc. v. Acme-McCray Corp.*, 541 F.2d 1047, 1056 (4th Cir. 1976) (quoting *Ceramic Tilers Supply, Inc. v. Tile Council of Am., Inc.*, 378 F.2d 283, 284–85 (9th Cir.1967)).

Similarly, a patent applicant is not entitled to a patent "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103. This element of patent validity is referred to as "obviousness."

Anticipation and obviousness are forms of patent invalidity, which is an affirmative defense to patent infringement claims. *See* 35 U.S.C. § 282(b)(2) (providing that any party

defending a patent infringement action may plead, as a defense, the invalidity of the allegedly infringed patent). Courts in this District differ over whether the *Twombly-Iqbal* pleading standard applies to the pleading of affirmative defenses. *Compare, e.g.*, *Long v. Welch & Rushe, Inc.*, 28 F. Supp. 3d 446, 461-62 (D. Md. 2014) (applying the *Twombly-Iqbal* standard), *with, e.g.*, *LBCMT 2007-C3 Urbana Pike, LLC v. Sheppard*, 302 F.R.D. 385, 387 (D. Md. 2014) (declining to apply the *Twombly-Iqbal* standard). In at least one case, the undersigned applied the *Twombly-Iqbal* standard to a defendant's stated affirmative defenses. *See Blind Indus. & Servs. of Md. v. Route 40 Paintball Park*, No. WMN-11-3562, 2012 WL 2946688, at *3 (D. Md. July 17, 2012). This Court need not revisit the debate, however, for even under the heightened *Twombly-Iqbal* standard, Defendant's proposed affirmative defense of invalidity is plausible.

> The *Twombly-Iqbal* pleading standard requires
>
> sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). Defendant's proffered evidence satisfies this standard. By presenting the '303 patent, ECF 20, Ex. A, and comparing its claims to the claims in Plaintiff's patents, ECF 20 at 3-6, Defendant has presented a proffer of evidence that would permit a finding of anticipation or obviousness. This affirmative defense, and the supporting evidence underlying it, when taken as true, allow this Court to draw a reasonable inference in support of the plausibility—though not necessarily the probability—of Defendant's argument succeeding on its merits. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (noting that the pleading standard is met as long as there is

"enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely" (internal quotation marks omitted)).  Thus, Defendant has succeeded in presenting a meritorious defense, favoring the setting aside of the default entered against it.

> **B.** **Acting with Reasonable Promptness**

Courts must consider the specific "facts and circumstances of each occasion" when determining whether a defendant acted in a reasonably prompt manner when moving to set aside a default judgment.  *Prescott v. MorGreen Solar Solutions, LLC*, 352 F. Supp. 3d 529, 537 (E.D.N.C. 2018) (quoting *U.S. v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982)).  Here, Defendant filed its Motion to Set Aside Default forty days after the entry of default, or ten days after the deadline set by the Court.

For comparison, the Court has held that a defendant acted reasonably promptly when filing a Motion to Vacate a Default 33 days after the entry of default.  *Wainwright's Vacations, LLC v. Pan Am. Airways Corp.*, 130 F. Supp. 2d 712, 718 (D. Md. 2001).  However, in another instance, the Court refused to strike a default judgment, in part because the defendant failed to offer any adequate excuse for its failure to retain counsel in time to prevent the default, even though the defendant acted promptly after the judgment was entered.  *Assoc. Press v. J.B. Broad. of Balt., Ltd.*, 54 F.R.D. 563, 564 (D. Md. 1972).

The circumstances of the latter case are more analogous to the instant case.  Defendant did relatively promptly with regard to the entry of default by responding within 33 days.  Defendant, however, did not act promptly within the circumstances of the case as a whole.  Defendant failed to respond to Plaintiff's pre-suit letters and telephone contacts regarding its allegations of infringement.  ECF 1, ¶¶ 18, 21; ECF 16, Ex. A, ¶¶ 18, 21.  Defendant failed to

respond to Plaintiff's Complaint and the Court's Summons.  Defendant failed to respond to the Court's Notice of Default within the allotted time limit of thirty days.  On the whole, this is not behavior that could be characterized as reasonably prompt.  This factor therefore weighs in favor of Plaintiff.

### C.     Personal Responsibility for the Default

As indicated above, Defendant's failure to respond in a timely manner to Plaintiff's Complaint, the Court's Summons, and the Notice of Default directly led to the entry of default. The Fourth Circuit has held that a defendant "cannot escape the consequences of his own negligence by claiming ignorance of the law of service of process." *S.C. Nat'l Bank v. Baker*, 941 F.2d 1207, 1991 WL 157277, at *3 (4th Cir. Aug. 19, 1991) (table decision).  The same concept applies in the instant case, in that Defendant cannot escape the consequences of its own negligence in claiming ignorance of the "requirements, obligations, and deadlines associated with the service of a complaint." ECF 16, Ex. B, ¶ 2 (Stellabuto Decl.).  Nor can Defendant escape the consequences of failing to retain counsel in a timely manner.  At the same time, there is no evidence that Defendant's delay was motivated by any intent to disregard or derail the legal process. *Compare with Russell v. Krowne*, No. DKC-08-2468, 2013 WL 66620, at *3 (D. Md. Jan. 3, 2013); *First Am. Fin. Corp. v. Homefree USA, Inc.*, No. 12-CV-02888-ELH, 2013 WL 2902856, at *4 (D. Md. June 12, 2013).  Ultimately, this factor also leans in favor of the Plaintiff.

### D.     Prejudice

Plaintiff argues that setting aside the default would cause it to suffer prejudice, because evidence may have been lost during the months between Defendant's receipt of Plaintiff's first letter regarding infringement and the entry of default.  ECF 19 at 8.  However, that same

unsubstantiated possibility might exist even had Defendant filed an answer, and had a default never been entered.  The "prejudice" factor is not satisfied if a plaintiff faces "no disadvantage . . . beyond that suffered by any party which loses a quick victory."  *Augusta*, 843 F. 2d at 812.  Moreover, supposition alone is insufficient to establish prejudice, in that "as obvious as it may be, it bears mention that no cognizable prejudice inheres in requiring a plaintiff to prove a defendant's liability, a burden every plaintiff assumes in every civil action filed in every federal court."  *Colleton*, 616 F.3d at 419.  Thus, Plaintiff fails to establish that it would be prejudiced by setting aside the default, and this factor weighs in favor of Defendant.

### E.      History of Dilatory Action

Neither party mentioned this factor in their arguments, and there is no evidence in the record of a history of dilatory action on the part of the Defendant, other than its default in this matter.  Thus, this factor weighs in favor of Defendant.

### F.      Availability of Less Drastic Sanctions

As Plaintiff itself has conceded, there are less drastic sanctions available in this case, namely requiring Defendant to pay Plaintiff's costs, expenses, and attorney's fees related to Plaintiff's need to seek default.  ECF 19 at 8.  "[W]hen a default judgment is vacated the trial court may nonetheless impose other sanctions against the offending attorney, such as awarding the non-movant's costs and attorney's fees."  *Augusta*, 843 F.2d at 811.  Given Defendant's failure to respond to Plaintiff's Complaint, the Court's Summons, or the entry of default in a timely manner, such pecuniary sanctions may be appropriate.  Moreover, their availability indicates that this factor weighs in favor of setting aside the default, and thus mitigates in favor of Defendant.

IV.   **CONCLUSION**

Upon review of the six *Payne* factors, the Court finds that just two factors weigh in favor of Plaintiff: whether Defendant acted with reasonable promptness and the personal responsibility of the defaulting party. In contrast, four factors weigh in favor of Defendant: whether the moving party has a meritorious defense; prejudice; whether there is a history of dilatory action; and the availability of less drastic sanctions. In light of the factors favoring Defendant, the "time-worn commitment to the resolution of disputes on their merits," *Colleton*, 616 F.3d at 420, and the long-held view that a motion to set aside default "must be 'liberally construed in order to provide relief from the onerous consequences of defaults and default judgments,'" *id.* at 421 (quoting *Tolson*, 411 F.2d at 130), this case is best resolved on its merits.

Accordingly, Plaintiff's Motion for Default Judgment, ECF 13, will be **DENIED**, and Defendant's Motion to Set Aside Default, ECF 16, will be **GRANTED**. Defendant will be required to respond to the Complaint within thirty days.

However, the Court also views Defendant's conduct as possibly deserving of monetary sanctions. Plaintiff will be permitted to file a motion seeking reasonable costs, expenses, and attorney's fees incurred in seeking default, and filing its Motion for Default Judgment. Any such motion should be filed on or before June 1, 2020. Defendant will then have until June 15, 2020, to file an opposition to the amount requested. A separate Order follows.

Dated:  May 11, 2020                                  /s/
                                                      Stephanie A. Gallagher
                                                      United States District Judge