**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

July 17, 2020

LETTER OPINION & ORDER

  RE: *Barrette Outdoor Living, Inc. v. Iron World Manufacturing, LLC*,
     Civil No. SAG-19-3027

Dear Counsel:

  Currently pending is a Motion for Attorneys' Fees and Costs ("the Motion") filed by Plaintiff Barrette Outdoor Living, Inc. ("Barrette"). ECF 28. Defendant Iron World Manufacturing, LLC ("Iron World") opposed the Motion, ECF 34, and Barrette filed a reply, ECF 38. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons stated herein, the Motion will be denied.

  As background, Barrette sued Iron World on October 16, 2019, alleging patent infringement. ECF 1. Following service of the Complaint and Summons, Iron World failed to timely respond, and Barrette obtained a Clerk's Entry of Default. ECF 10, 12. Before this Court ruled on Barrette's Motion for Default Judgment, ECF 13, Iron World filed a Motion to Set Aside Default. ECF 16. After full briefing, this Court decided both motions together, granted Iron World's Motion to Set Aside Default, and denied Barrette's Motion for Default Judgment. ECF 21, 22. In that Opinion, issued on May 11, 2020, the Court stated:

> However, the Court also views Defendant's conduct as possibly deserving of monetary sanctions. Plaintiff will be permitted to file a motion seeking reasonable costs, expenses, and attorney's fees incurred in seeking default, and filing its Motion for Default Judgment. Any such motion should be filed on or before June 1, 2020.

*Id.* at 10. The accompanying Order reiterated, "Plaintiff is **PERMITTED** to file a motion seeking an award of reasonable costs, expenses, and attorney's fees incurred in seeking an Order of Default and in filing its Motion for Default Judgment, on or before **June 1, 2020.**" ECF 22, ¶ 3 (emphasis in original).

  When the Opinion and Order were issued on May 11, 2020, Barrette had a single attorney of record on this Court's docket, an associate in the Washington, D.C. office of the international law firm Duane Morris LLP ("the D.C. associate"). Apparently, however, the D.C. associate left Duane Morris, for another position, in mid-March. ECF 28-2, ¶ 4. At the time of the D.C. associate's departure, many attorneys were already working from home as a result of the COVID-19 pandemic, and Duane Morris, like many other firms, formally closed its offices shortly

*Barrette Outdoor Living, Inc. v. Iron World Manufacturing LLC*
Civil No. SAG-19-3027
July 17, 2020
Page 2

thereafter.  *Id.*  ¶¶ 4-5.  Lead counsel on this matter, David J. Wolfsohn, Esq., who is a partner based in Philadelphia, attests,

> Under normal circumstances, in light of the departure of our local counsel, I would have substituted as local counsel another attorney at Duane Morris admitted in the District of Maryland.  I also would have filed *pro hac vice* applications for me and Mr. Marandola [the lead Philadelphia associate on the case] to ensure we received notice of filings and Court actions.  However, and unfortunately, in the transition to remote work made necessary by Covid-19, we mistakenly failed to take these steps.

*Id.* ¶¶ 6-7.  Accordingly, Barrette's attorneys did not receive the ECF notification regarding this Court's May 11, 2020 Opinion and Order, because, presumably, it went only to the defunct email address of the departed D.C. associate.  Barrette's counsel first learned of the Opinion and Order on June 5, 2020, when they received a courtesy copy of Iron World's Answer and Counterclaim.  *Id.* ¶ 8.  They then accessed the docket, and learned that they had missed the June 1, 2020 deadline.  *Id.*  Barrette filed the instant Motion for Attorney's Fees and Costs on June 9, 2020, eight days after the deadline imposed by this Court.  ECF 28.

Barrette contends that its belated filing was due to excusable neglect. ECF 28-1 at 4-5.  Where a party moves to toll a filing period after the deadline has passed, courts "may, for good cause, extend the time . . . if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b)(1).  Neglect is defined as "to leave undone or unattended to esp[ecially] through carelessness."  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993) (emphasis omitted).  As the Fourth Circuit has explained,

> Whether neglect is "excusable" has been described by the Supreme Court as "at bottom an equitable [inquiry], taking account of all relevant circumstances," including the following: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was in the reasonable control of the movant; and (4) whether the movant acted in good faith.

*Fernandes v. Craine*, 538 F. App'x 274, 276 (4th Cir. 2013) (quoting *Pioneer*, 507 U.S. at 395 (1993)).  The Fourth Circuit has "stressed that the third *Pioneer* factor—the reason for the delay— is the 'most important.'"  *Id.* (quoting *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996)).  The Fourth Circuit has also cautioned that excusable neglect is only meant to be invoked in extraordinary cases to avoid injustice, and is not meant to be easily demonstrated.  *Thompson*, 76 F.3d at 534 (citing Advisory Committee Notes to 1964 Fed. R. Civ. P. 73(a)).  "[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect." *Pioneer*, 507 U.S. at 392 (internal quotations omitted).

Applying the four *Pioneer* factors to this case, this Court finds that Duane Morris's error constitutes run-of-the-mill neglect, not an extraordinary example of excusable neglect.  It is true,

*Barrette Outdoor Living, Inc. v. Iron World Manufacturing LLC*
Civil No. SAG-19-3027
July 17, 2020
Page 3

of course, that the eight-day delay in the filing of the motion causes no meaningful prejudice to Iron World, and has no significant impact on the progress of the judicial proceedings, since the attorneys' fee petition is independent of the ongoing discovery between the parties. In addition, the Court has no reason to believe that Duane Morris acted in anything other than good faith.

However, the "most important" *Pioneer* factor, the reason for the delay, cuts strongly against Barrette. To be sure, attorneys have no general duty to monitor case dockets to look for new filings. *See Fernandes*, 538 F. App'x at 276. Yet this Court is permitted to set, and enforce, rules governing appearances of counsel in its cases. *See* 28 U.S.C. § 2071 (permitting courts to prescribe rules for the conduct of their business); *id.* § 1654 (noting that parties may appear through counsel in accordance with the "rules of such courts"). To that end, this Court's Local Rules require companies to appear through counsel. *See* Loc. R. 101.1(a) ("All parties other than individuals must be represented by counsel."). In other words, during the pendency of litigation, a company must maintain valid counsel of record. For this Court to effectively manage its caseload, and set deadlines, it must be able to rely on the assumption that notice of its rulings will be provided to active counsel of record, using the up-to-date contact information that the attorneys provide.

The Fourth Circuit's decision in *Martinez v. United States*, 578 F. App'x 192 (4th Cir. 2014), bolsters this notion. In that case, the trial court ordered the plaintiff, Martinez, to show cause why her complaint should not be dismissed for untimely service. *Id.* at 193. Martinez sought an extension of time to effect service, after explaining that the delay was caused by her attorney having not received notice of the summons being issued, because he had changed his primary email address and failed to update it in the electronic case filing ("ECF") system. *Id.* The trial court granted the motion, and gave Martinez until July 30 to effect service. *Id.* Martinez, however, did not serve the complaint until August 15, explaining that the ECF system "continued to send notifications only to her attorney's incorrect email address, despite his diligent attempts to correct this problem." *Id.* The trial court found that this reason was not "excusable neglect" for failure to comply with the July 30 deadline, and dismissed the case. *Id.* at 193. The Fourth Circuit affirmed, reasoning, "Martinez's attorney was clearly aware that the ECF was sending notifications to an improper email address before the extension was granted. Even if he believed he had fixed the problem, a reasonably diligent attorney would have monitored that email address or the court's docket until he was certain that the ECF was functioning properly." *Id.* at 194.

Here, as of May 11, 2020, the D.C. associate was Barrette's *only* counsel of record. *See also* ECF 24, 25, 26 (*pro hac vice* motions, and an entry of appearance, filed by Messrs. Dunham, Marandola, and Wolfsohn, on June 9, 2020). But by then, the D.C. associate had left Duane Morris's employ for, presumably, nearly two months. A firm of the size and caliber of Duane Morris, acting with reasonable diligence, should have mechanisms in place to ensure that its departing attorneys are replaced with, or at least supplemented by, other counsel. Indeed, when a case like this is being litigated by lead attorneys who are not formally admitted to practice in this Court, those attorneys should seek admission *pro hac vice*, to ensure (1) that their client maintains proper representation, and (2) that they receive notifications of filings in the case. This strikes with particular force here, where the single attorney identified to the Court was not even lead

counsel. *See* ECF 28-3 (demonstrating that the D.C. associate worked fewer than 25% of the hours billed relating to the motion for default judgment). For an unidentified tactical reason entirely "within the reasonable control of the movant," *Pioneer*, 507 U.S. at 395, Barrette's counsel decided not to follow that practice, and instead decided to have their client represented on the record by only a single associate in a different office of the firm, who subsequently left the firm without replacement. That tactical determination, not a general failure to monitor the case docket, directly caused the belated filing in this case, and renders the neglect in this matter inexcusable. *See Martinez*, 578 F. App'x at 194; *Thompson*, 76 F.3d at 534 (noting that "a mere concession of palpable oversight or administrative failure generally has been held to fall short of the necessary showing" of excusable neglect (quoting *In re O.P.M. Leasing Serv., Inc.*, 769 F.2d 911, 917 (2d Cir. 1985))); *see also Gayle v. United Parcel Serv., Inc.*, 401 F.3d 222, 226-27 (4th Cir. 2005) (holding that "attorney negligence—including allowing a client's case to fall through the cracks" was not an "extraordinary circumstance" justifying the equitable tolling of a statute of limitations).

Although Duane Morris cites the unusually disruptive circumstances surrounding the COVID-19 pandemic as the reason for its neglect, this Court is unpersuaded. It is difficult to imagine that the D.C. associate's departure "for a new position" on March 18, 2020 was an unanticipated event, and Mr. Wolfsohn makes no such representation. *See* ECF 28-2. Moreover, counsels' absence from Duane Morris's physical workspace did not, in this Court's view, cause the failure of notification about this Court's Opinion and Order. ECF notifications are only sent electronically, not by regular mail, to the attorneys of record in each case. Thus, whether Duane Morris's Philadelphia attorneys were working in their offices or in their homes, they would have remained unaware of the Opinion and Order as a result of their failure to replace or supplement the departed attorney of record and his email address. Despite a pending, contested motion in the case, the situation remained unremedied for more than two months, until receipt of Iron World's Answer and Counterclaim.

Although this Court does not reach the merits of Barrette's fee petition, it is worth noting, in addition, that the billing rates it requests far exceed the presumptively reasonable rates permitted by the Local Rules of this Court. *See* Loc. R. App. B (D. Md. 2018) (Rules and Guidelines for Determining Attorneys' Fees in Certain Cases). The rate requested for each attorney in this matter falls well outside those presumptively reasonable ranges. Thus, even if the merits of the fee petition were to have been considered, it is likely that the amount awarded would have been dramatically reduced.

For these reasons, Barrette's Motion for Attorneys' Fees, ECF 28, is **DENIED**. Despite the informal nature of this letter, it shall be flagged as an Opinion and docketed as an Order.

                                                Sincerely yours,

                                                /s/

                                              Stephanie A. Gallagher
                                              United States District Judge